UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:08CV-230-H

STEPHEN ZOLPER                                                                               PLAINTIFF

V.

DAVID BAUER                                                                                   DEFENDANT

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Stephen Zolper, filed suit in state court to enforce an agreement allegedly signed by Defendant, David Bauer, regarding the disposition of certain funds Defendant received as the beneficiary of a 401(k) plan. Defendant removed to federal court. Plaintiff's motion to remand raises the issue whether ERISA preempts Plaintiff's contract claim in these circumstances. For the reasons that follow, the Court will sustain the motion and remand to state court.

I.

Prior to her death on April 2, 2007, Plaintiff's sister, Suzanne Zolper, was a participant in a 401(k) plan (the "Plan") offered by her employer. The named beneficiary of the Plan was Ms. Zolper's husband, Defendant David Bauer.

Aware that she was dying of cancer, Ms. Zolper drafted and executed a will in February 2007 which divided any payments received from the Plan upon her death equally between Plaintiff and Defendant. However, she did not file the documents necessary to effectuate any changes in the beneficiary designation on file with the Plan. Therefore, at the time of Ms.

Zolper's death, the Plan's funds were disbursed in their entirety to Defendant as the named beneficiary. ERISA law required such a result.

In an effort to effectuate Ms. Zolper's supposed intent as to the Plan assets, Plaintiff and Defendant discussed the ultimate disposition of the funds after the Plan had made its disbursement. Eventually, they entered into an agreement styled as a "Release and Settlement Agreement" ("the Agreement"), pursuant to which Defendant would divide whatever he received from the Plan equally between Plaintiff and himself. However, despite the Agreement, Defendant never made such a division of the funds he received from the Plan. Defendant now disputes the legitimacy and enforceability of the Agreement.

Consequently, on April 7, 2008, Plaintiff filed suit in state court seeking enforcement of the Agreement and payment by Defendant of one-half of the funds he received from the Plan. Defendant removed the case to federal court on the grounds of federal question and diversity jurisdiction. Plaintiff now challenges that removal.

II.

Three fundamental principles of federal court jurisdiction bear mention at the outset. First, removal of an action from state to federal court is only authorized under 28 U.S.C. § 1441 where the action could have been brought originally in federal court. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). Second, when a case is improperly removed, that is, when "it appears that the district court lacks subject matter jurisdiction," the court must remand it to state court. 28 U.S.C. § 1447(c). Finally, "[a]bsent diversity of citizenship, federal-question jurisdiction is required" for a case to have been brought originally in federal court. *Id.*

Defendant asserts that this Court could have had original jurisdiction over this case

2

because this case "aris[es] under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.¹ Specifically, Defendant asserts that Plaintiff's action implicates the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq*. That act provides in pertinent part that "the district courts of the United States shall have exclusive jurisdiction" of ERISA claims brought "by a participant, beneficiary, [or] fiduciary." 29 U.S.C. § 1132(e)(1). Therefore the Court must examine the circumstances under which, as a general matter, state law claims implicate ERISA and whether ERISA preempts Plaintiff's state law claim based on the instant facts.

A.

Plaintiff's claim is not styled as a claim brought under ERISA, but "ERISA preempts state law claims that 'relate to' any 'employee benefit plan.'" *Miller v. PPG Indus., Inc.*, 237 F.Supp.2d 756, 758 (W.D. Ky. 2002) (citing 29 U.S.C. § 1144(a) and *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41 (1987)). Despite the broad preemptive language of 29 U.S.C. § 1144(a), "Congress did not intend . . . for ERISA 'to preempt traditional state-based laws of general applicability that do not implicate the relations among the traditional ERISA plan entities, including the principles, the employer, the plan, the plan fiduciaries, and the beneficiaries." *Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.* ("*PONI*"), 399 F.3d 692, 698 (6th Cir. 2005). Thus the Sixth Circuit has interpreted ERISA as preempting only:

> state laws that (1) mandate employee benefit structures or their administration; (2) provide alternate enforcement mechanisms; or (3) bind employers or plan administrators to particular choices or preclude uniform administrative practice, thereby functioning as a regulation of an ERISA plan itself.

---

¹Defendant's Notice of Removal asserts that this Court has federal question jurisdiction pursuant to "28 U.S.C. § 1131," a statute which does not exist. The Court assumes Defendant intended to cite 28 U.S.C. § 1331.

*Id.* (internal citations and quotation marks omitted). Accordingly, Plaintiff's claim will only arise under or be preempted by ERISA if it falls within one or more of these categories.

B.

Here, the Plan in which Ms. Zolper was a participant and of which Defendant was the beneficiary is implicated because its proceeds were the subject of the contract which Plaintiff now seeks to enforce. However, the implication is tangential at best. Plaintiff does not contest any payment or other action by the Plan. Plaintiff "alleges no wrongdoing on the part of the Plan." Plaintiff's Motion to Remand at 5. Thus, both sides agree that the proceeds of the Plan were "properly distributed" to Defendant under ERISA law.[2] Plaintiff seeks to enforce an agreement separate from and subsequent to the ERISA distribution.

The Court has reviewed Plaintiff's requested relief as an indication of its relation (or lack of it) to ERISA. *See Overall v. Sykes Health Plan Servs., Inc.*, 2006 WL 1382301, *2 (W.D. Ky. May 16, 2006) (citing *Ramsey v. Formica Corp.*, 398 F.3d 421, 424 (6th Cir. 2005)). Nowhere does Plaintiff seek any action by the Plan. Nor does Plaintiff seek to overturn a Plan action. Indeed, even if Plaintiff were granted the full extent of the relief he seeks, only Defendant would be required to act. Defendant argues that "[t]he complaint attempts to dictate the ultimate distribution of the Humana employee benefits by attacking the beneficiary that has received said benefits," Defendant's Response at 5. However, Plaintiff makes no mention of the Plan in his requested relief, but focuses exclusively on the Agreement. Complaint at ¶¶ 11–13, 16–21.

---

[2]This lack of disagreement as to the propriety of whom the Plan paid is entirely appropriate, as the beneficiary designation on file with the Plan controls the distribution of Plan assets, regardless of what other documents might say. *McMillan v. Parrott*, 913 F.2d 310, 311–12 (6th Cir. 1990); *see also Greenebaum Doll & McDonald PLLC v. Sandler*, 458 F.Supp.2d 420, 423 (W.D. Ky. 2006), *rev'd in part on other grounds*, 2007 WL 4232825 (6th Cir. 2007).

4

Thus while it is certainly true that Defendant, who happens to be the beneficiary of an ERISA plan, is being "attacked" by Plaintiff, as noted above, *Plaintiff does not contest that Defendant was the proper beneficiary of the Plan's assets*.  He merely argues that pursuant to the subsequent Agreement, Defendant owes him a certain sum of money, irrespective of the Plan's terms.  The Court's analysis might be different if Plaintiff were seeking to enforce an agreement which purported to govern the actual distribution of the Plan's assets by the Plan itself.

Defendant's reliance on this Court's opinion in *Sandler* in support of his argument for preemption is misplaced.  At a very general level, *Sandler* is similar to the instant case because both concerned an ERISA plan and a separate contractual relationship not governed by ERISA.  But in a critical distinction, the parties' dispute in *Sandler* centered not on an alleged breach of the non-ERISA contract, but instead on whether the parties' execution of the contract altered the terms of the ERISA plan, *i.e.*, whether the Plan should have disbursed funds to someone other than the person to whom it did.  458 F.Supp.2d at 422–23.  Thus, the Court's analysis was focused on whether or not "a plan administrator must follow the plan documents as written," *id.* at 423, a question not at issue here.[3]

More analogous to the instant facts are those considered by this Court in *Miller*.  There the Court found that a plaintiff's claim that his employer breached a stock option agreement (which was not an ERISA-governed plan) was *not* preempted by ERISA, despite the fact that

---

[3]Equally unavailing is Defendant's reliance on the Sixth Circuit's unpublished opinion in *Czarski v. Bonk*, where the court held that a state law claim contesting entitlement to a decedent's assets, including an ERISA-governed 401(k) plan, was properly removed to federal court due to ERISA preemption.  1997 WL 535773, *1–2 (6th Cir. Aug. 28, 1997).  As in *Sandler*, the issue in *Bonk* was to whom the ERISA plan should make payment. Again, this is not the matter at issue in this case, where the parties are disputing rights under a contract separate and distinct from the ERISA plan and only refer to the ERISA plan as being the source of the funds to which Plaintiff asserts he is entitled.

5

certain provisions of the stock option agreement were triggered by a separate, ERISA-governed plan's determination that the plaintiff was disabled. 237 F.Supp.2d at 762–63 (noting also that "contract law is a realm traditionally reserved to the states"). As in *Miller*, here "[n]o aspect of Plaintiff's ERISA benefits appear to be affected" by the dispute in question, "administration of ERISA will not be in any way affected" by the ultimate determination on Plaintiff's contract claim, and "[u]ltimately, there is nothing in the ERISA plan that is altered, affected, or diminished as a consequence of this claim." *Id.* at 763. Thus, as in *Miller*, here Plaintiff's claim relates only to the subsequent contractual relationship between Plaintiff and Defendant, "and does not touch upon the relationship between the ERISA plan and its beneficiary." *Id.* In *Miller*, "[t]he mere fact that Plaintiff's status as 'disabled' [was] determined by an ERISA plan, d[id] not itself allow Defendant to sweep in all contract claims also affected by that classification into federal jurisdiction under principles of preemption as well." *Id.* The same is true here as to the parties' dispute about funds originally received from an ERISA-governed plan.

The Sixth Circuit seems to acknowledge and agree with this distinction. It has held that ERISA did not preempt an employer's breach of contract action against a party whose sole relationship with the ERISA plans offered by the employer was that of providing record-keeping services to the plans, since the action would neither "result in mandating a specific employment benefit structure, providing an alternate enforcement mechanism of an ERISA plan, or regulating an ERISA plan itself," nor would it "implicate relations among the traditional ERISA plan entities." *PONI*, 399 F.3d at 700 (internal citations and quotation marks omitted). The court noted that claims alleging breaches of contracts which are "*separate and distinct* from the ERISA qualified plan" are usually *not* preempted by ERISA. *Id.* at 699 (emphasis in original,

6

internal citations omitted). Following this logic, the enforceability and validity of Defendant's subsequent and entirely separate agreement should turn entirely upon state law rather than upon ERISA principles.[4] After all, in most instances, a beneficiary's use of plan proceeds is not a concern of ERISA. Therefore there is no "federal question" over which this Court can properly retain jurisdiction under 28 U.S.C. § 1331.

IV.

In addition to federal question jurisdiction, Defendant asserts that this Court could have had original jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because "the amount in controversy exceeds $75,000.00 and the Parties are residents of different States." Notice of Removal at ¶ 4.

While Defendant's factual assertions on this point may be accurate, actions removed on the basis of diversity of citizenship "shall be removable only if none of the parties in interest properly joined and served *as defendants* is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b) (emphasis added). Arguing for an "exception" to this clear statutory language, Defendant cites cases discussing the issue of so-called fraudulent joinder, where one non-diverse defendant is joined with several diverse defendants for the sole purpose of defeating federal jurisdiction. In such circumstances, *i.e.* where joinder of a defendant is determined not to be based on a colorable claim against the joined party, the joinder of this non-diverse party will not preclude removal. *See, e.g., Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999).

Quite simply, the issue of fraudulent joinder is wholly irrelevant to this case, and

---

[4] To be clear, at this time the Court expresses no opinion as to the enforceability of the Agreement.

Defendant's invocation of it demonstrates at best a misapprehension of fundamental principles of federal law or, more nefariously, a deliberate effort to engage in improper dilatory tactics. Common sense dictates that where a complaint names only a single defendant, issues as to the joinder of multiple defendants cannot be present. Furthermore, even if Defendant were correct that "the Plaintiff has no valid cause of action against the resident Defendant," Defendant's Response at 3, this would dictate not remand, but dismissal of Plaintiff's complaint. In sum, there is clearly no basis for this Court to retain jurisdiction over this case based on the diversity of the parties' citizenship.

V.

When a court remands a case on the basis of a lack of jurisdiction, it "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). Such a penalty is appropriate "only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).

Here, as noted above, diversity jurisdiction clearly did not provide a basis for removal. Moreover, in light of the clear and unambiguous text of 28 U.S.C. § 1441(b), Defendant had no objectively reasonable basis for removal on diversity grounds. *Cf. Chase Manhattan Mortgage Corp. v. Smith*, 507 F.3d 910, 914 (6th Cir. 2007).

However, as the Court has noted in the past, "many cases from other circuits and even within the sixth circuit present a confusing picture of ERISA jurisdiction," *Pentech Infusions, Inc. v. Anthem Health Plans of Ky., Inc.*, 387 F.Supp.2d 712, 714 (W.D. Ky. 2005). This particular case seems clear-cut now, but an argument to the contrary was not objectively

unreasonable.  Therefore the Court will not exercise its discretion to order any payment of Plaintiff's fees or costs.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Plaintiff's motion to remand is SUSTAINED and this case is REMANDED to Jefferson Circuit Court.

IT IS FURTHER ORDERED that Plaintiff's motion for payment of Plaintiff's fees or costs is DENIED.

cc:     Counsel of Record